1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA ex rel        No   C 95-1825  VRW
     ROBERT COSTA and STATE OF
12   CALIFORNIA ex rel ROBERT COSTA,             ORDER

13                    Plaintiffs,

14
                          v
15

16   BAKER & TAYLOR, INC d/b/a BAKER &
     TAYLOR BOOKS, and W R GRACE & CO
17   - CONNECTICUT,

18                    Defendants.
     _____/
19

20

21          *Qui tam* plaintiff Robert Costa moves for an award of

22   attorneys' fees, costs and expenses pursuant to the California

23   False Claims Act (CFCA), Cal Gov't Code § 12650 et seq.  Doc #348.

24   Costa's motion is GRANTED IN PART.  Costa is entitled to fees,

25   costs and expenses in an amount to be determined following further

26   submissions of the parties as set forth more fully below.

27   //

28   //

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

I

Relators Robert Costa and Ronald Thornburgh (collectively "relators") filed this *qui tam* action on behalf of the United States and the State of California in 1995, alleging that defendants Baker & Taylor, Inc, d/b/a Baker & Taylor Books ("Baker & Taylor"), and its prior parent company W R Grace & Co (collectively "defendants"), had schemed to overcharge public libraries, schools and federal and state offices and agencies for books. Ultimately, seventeen other states intervened as plaintiffs. Relator Thornburg was dismissed on statute of limitations grounds on March 20, 1998, and is no longer a party. Doc #144.

On March 9, 1999, the court concluded that much of the alleged fraud had been publicly disclosed prior to the filing of this action and accordingly dismissed relator Costa as a *qui tam* plaintiff for lack of subject matter jurisdiction pursuant to the public disclosure bar of the False Claims Act (FCA), 31 USC § 3730(e)(4)(A). Doc #251. Because the CFCA is patterned on the FCA and there was no authoritative case law construing the California public disclosure bar at the time of the court's dismissal, the court employed Ninth Circuit precedent in concluding that Costa's California *qui tam* claim was also barred under the CFCA. The court denied relators' subsequent motion for leave to file a motion for reconsideration. Doc #261.

On June 25, 1999, the United States settled its claims against Baker & Taylor for $3 million. Doc #350 (Chatfield Decl) ¶14; see also Doc #253 (order dismissing United States' claims against Baker & Taylor with prejudice pursuant to settlement). On

July 31, 2000, the United States, the State of California and the seventeen intervening states entered into a global settlement with defendants. The global settlement resolved the United States' claims against W R Grace for $3 million, California's claims against both defendants for $4 million and the remaining states' claims against both defendants for a total of $8.5 million. Id ¶16. The United States and the State of California each paid relators 15% of their respective settlement proceeds to relators. Id ¶¶15, 17-18. Relators also applied for attorneys' fees, costs and expenses pursuant to the FCA and the CFCA. Doc #284. The court denied relators' application based on the earlier order of dismissal. Doc #329.

Notwithstanding the global settlement, final judgment was not entered because the United States' claim against W R Grace remained open pending a criminal investigation in a different district. Further, the court denied relators' motion to certify the appealability of their dismissals. Doc #329. Entry of judgment was further delayed by a bankruptcy petition filed by W R Grace in Delaware. See Doc #330. Relators sought and obtained an order from the bankruptcy court clarifying that the bankruptcy stay did not encompass Baker & Taylor. Doc #359 (Chatfield Supp Decl) ¶9. Relators also sought, but were denied, an order from the bankruptcy court allowing their claims to proceed against W R Grace. W R Grace was eventually dismissed per the stipulation of all parties on August 31, 2004. Doc #338.

At the end of this procedural maze was an opening for Costa to file a motion for reconsideration of the court's order dismissing him as a *qui tam* plaintiff, Doc #335, which the court

3

United States District Court

For the Northern District of California

1  denied as to the FCA claim but granted as to the CFCA claim in

2  light of intervening California authority interpreting California's

3  public disclosure bar more narrowly than its federal counterpart.

4  Doc #347.  His status as a proper CFCA relator now established,

5  Costa now moves for attorneys' fees, costs and expenses pursuant to

6  California Government Code § 12652(g)(8).

7

8                                  II

9          Whether Costa is entitled to attorneys' fees and the

10 manner in which those fees should be calculated are both governed

11 by California law.  E g, Mangold v California Public Utilities

12 Com'n, 67 F3d 1470, 1478-79 (9th Cir 1995).  Section 12652(g)(8)

13 provides:  "If the state, political subdivision, or the *qui tam*

14 plaintiff prevails in or settles any [CFCA action initiated by the

15 *qui tam* plaintiff], the *qui tam* plaintiff shall receive an amount

16 for reasonable expenses that the court finds to have been

17 necessarily incurred, plus reasonable costs and attorney's fees."

18 Although Baker & Taylor does not dispute Costa's entitlement to

19 fees, costs and expenses under § 12652(g)(8), Baker & Taylor

20 challenges the amount of the fee.

21         "[T]he fee setting inquiry in California ordinarily

22 begins with the 'lodestar,' i e, the number of hours reasonably

23 expended multiplied by the number multiplied by the reasonable

24 hourly rate."  PLCM Group, Inc v Drexler, 22 Cal 4th 1084, 1095

25 (2000).  The reasonable hourly rate is the "prevailing rate for

26 private attorneys in the community conducting noncontingent

27 litigation of the same type."  Ketchum v Moses, 24 Cal 4th 1122,

28 1133 (2001) (original emphasis omitted); see also Serrano v Unruh,

                                4

United States District Court

For the Northern District of California

32 Cal 3d 621, 640 n 31 (1982) ("<u>Serrano IV</u>") (quoting other courts' formulations of reasonable hourly rates as "comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation" and the "hourly amount to which attorneys of like skill in the area would typically be entitled" (quotations omitted)).

Costa's fee request is organized along two matrices. First, fees are apportioned across four phases of litigation:

| PHASE | DESCRIPTION | HOURS | X CURRENT STANDARD RATES |
|-------|-------------|-------|--------------------------|
| One | "investigation and drafting, filing and service of the complaint and detailed disclosure statement" | 152.5 | $74,730.00 |
| Two | "investigation and assisting the government in prosecution of this action including as well as assisting the government with settlement strategy" | 1,683.25 | $824,682.50 |
| Three | "advocating for Relators in this case, opposing motions to dismiss, and negotiating a relators' share" | 474.35 | $211,962.50 |
| Four | "taking steps to secure an award of attorneys' fees, expenses and costs," including efforts to obtain clarification from bankruptcy court regarding the scope of the stay | 353.35 | $139,608.75 ($59,368.75 in connection with bankruptcy) |
| | TOTAL: | 2,663.45 | $1,250,983.75 |

Chatfield Decl ¶¶7, 12, 22, 29.

//

//

//

5

Second, the requested fees are apportioned according to whether work benefitted the federal claims, the California claims (or both):

| CLAIMS | HOURS | X CURRENT STANDARD RATES |
|---|---|---|
| Federal only | 76 | $37,412.50 |
| California only | 217.75 | $106,225.00<br><br>($15,137.50 in connection with negotiating relator's share) |
| Both Federal and California | 2,369.70 | $1,125,346.25 |
| TOTAL: | 2,663.45 | $1,268,983.75 |

Id ¶30 & n 2.

Before turning to the parties' arguments, the court notes a discrepancy in the above totals of precisely $18,000. At the hearing, counsel explained that digits in one of the addend figures were inadvertently transposed (specifically, that $842,682.50, not $824,682.50, in fees were incurred in "Phase Two"). Costa should address this discrepancy in his next submission to the extent necessary in light of the modifications prescribed herein.


III

The court first addresses Baker & Taylor's objections to the number of hours included in Costa's fee request.


A

Baker & Taylor contends that Costa is not entitled to fees for services rendered only in connection with the FCA claim because of his earlier dismissal. Costa initially reiterated (but

United States District Court

For the Northern District of California

understandably relegated to a footnote) his earlier failed argument to the contrary, Doc #349 at 9 n 5, but clarified in his reply that he does not seek fees for services that benefitted the FCA claim only, Doc #354 at 10 n 6.

**B**

Next, Baker & Taylor argues that Costa is not entitled to fees for services that benefitted both the FCA and CFCA claims. The court disagrees.

"Where the issues are so interrelated that it is impossible to separate them into claims for which fees are and are not awardable, no apportionment need be made." LeVine v Weis, 90 Cal App 4th 201, 214 (2001) (deferring to trial court's discretion in setting amount of fees and affirming fee award despite non-apportionment among successful CFCA claim and other claims that failed early in the litigation). "All expenses incurred on the common issues qualify for an award." Akins v Enterprise Rent-a-Car Co, 79 Cal App 4th 1127, 1133 (2000) (citing Reynolds Metals Co v Alperson, 25 Cal 3d 124, 129-30 (1979)). There can be little doubt that questions of liability under the FCA and the CFCA overlapped significantly. The best Baker & Taylor can muster to the contrary is that the narrower scope of the CFCA's public disclosure bar demonstrates the two statutes are distinct. Doc #354 (Opp) at 11 n 6. But as Costa suggested at the hearing, Baker & Taylor's argument proves too much: Prior to the recent divergence of California and federal law on the public disclosure bar, the CFCA essentially mirrored the FCA on questions of liability due to its newness and concomitant lack of interpretive case law. Because the

7

FCA claim was sufficiently interrelated to the CFCA claim, apportionment is not necessary and, in any event, would be a difficult and impractical undertaking for the court. Accordingly, Costa will not be denied fees for services that benefitted the CFCA claim simply because those services also benefitted the FCA claim.

C

Next, Baker & Taylor argues that Costa is not entitled to reimbursement for fees for services rendered between the denial of his first motion for reconsideration of his dismissal and the filing of his second, partially successful, motion for reconsideration (which, according to Baker & Taylor, amounts to 355.75 hours valued at $143,000, including 12.25 hours billed at $6,300 attributable only to the FCA claim). Opp at 12 & n 7. Within this subset of billed time, Baker & Taylor alternatively argues that Costa should not be reimbursed for attorney effort expended in connection with W R Grace's bankruptcy (which, according to Baker & Taylor, accounts for 188.25 hours billed at $67,093.75). Id at 12 & n 8; Doc #353 (Wallach Decl) ¶4 & Ex B.

The court agrees that little, if any, of this time was "necessarily incurred," Cal Gov't Code § 12652(g)(8), to advance the CFCA claim on its merits. Specifically, fees in connection with Costa's motions for reconsideration of his dismissal and a certificate of appealability of his dismissal, as well as his first application for fees and costs, were not "necessarily incurred" to advance the CFCA claim. The same is true for Costa's efforts before the bankruptcy court, which occurred after the United States and the State of California had settled their claims against

United States District Court

For the Northern District of California

8

United States District Court

For the Northern District of California

defendants.  Rather, the foregoing items were, in essence, directed at obtaining reinstatement (either on appeal or, as it turned out, from this court) of relators' status as nominal parties in order to (1) increase one or both relators' bounty and (2) secure an award of attorneys' fees and costs provided for by statute.  And as counsel conceded at the hearing, after the United States and the State of California settled their claims against defendants and paid Costa a relators' share, the only purpose of further litigation was to secure a fee award.

"[A]bsent circumstances rendering the award unjust, fees recoverable * * * ordinarily include compensation for all hours reasonably spent * * * to establish the fee claim."  _Serrano IV_, 32 Cal 2d at 639; see also _Ketchum_, 24 Cal 4th at 1141.  Although the court is aware of no specific California case law addressing fees for fee-related litigation in the CFCA context, the court has little doubt that California courts would apply the general rule stated above were this case before them.  Cf _Ketchum_, 24 Cal 4th at 1142 (applying without analysis _Serrano IV_'s principles regarding fees for fee litigation, which were rendered in the context of Cal Code Civ Proc § 1021.5, in the context of Cal Code Civ Proc 425.16).  Baker & Taylor does not argue the contrary.

Further, fees for fee-related litigation should not be denied simply because those proceedings are unusually protracted.  See _Serrano IV_, 32 Cal 3d at 632, 634-35 (opining that because the private attorney general doctrine "will often be frustrated, sometimes nullified, if awards are diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim," fees for fee-related litigation should be awarded even

9

**United States District Court**

For the Northern District of California

"[i]n cases where entitlement is vigorously contested" and "the hours demanded * * * dwarf those spent to establish the claim on the merits"); cf <u>Graham v DaimlerChrysler Corp</u>, 34 Cal 4th 553, 580-84 (blessing enhancement of fee-related lodestar under appropriate circumstances).  Accordingly, fees for steps taken by counsel to reinstate Costa's status as a proper CFCA relator are not precluded simply because, at the end of the day, that status entitles Costa to nothing more than attorneys' fees.  Still, the court concludes that Costa is not entitled to fees for certain categories of what was essentially fee-related work.

First, the court finds it inappropriate to award fees for relators' first motion for attorneys' fees.  Costa was not a proper *qui tam* plaintiff in the eyes of the law at that time.  In denying that motion, the court noted that relators had cited no authority for the proposition that they were entitled to fees despite their dismissal.  See Doc #329 at 4.  It would approach absurdity to award Costa fees for an earlier, legally unsupported, fee application that the court denied.

The court also finds that time expended in connection with relators' FRCP 54(b) motion was not reasonably spent.  In denying that motion, the court summarily found relators' request for immediate appealability to be wholly unjustified given that federal and state prosecuting authorities' diligent pursuit of their respective claims was propelling the case to final judgment. Id at 3.  (It bears mention that the stay effected by W R Grace's bankruptcy petition was not on the horizon at that time.)  Under these circumstances, although Costa's FRCP 54(b) motion may have been directed toward reinstatement of his status as a proper

United States District Court

For the Northern District of California

relator and his corresponding right to attorneys' fees, it was
wasted effort that need not ⸺ and will not ⸺ be reimbursed.  See
<u>Serrano IV</u>, 32 Cal 3d at 635 & n 21.

        Turning to Costa's efforts before the bankruptcy court,
the court concludes that Costa should be awarded fees for some, but
not all, of this time.  California courts have acknowledged the
propriety of awarding fees for efforts in collateral proceedings
"that may not have been absolutely necessary to the action in which
fees are awarded but was nonetheless closely related to the action
in which fees are sought and useful to its resolution." <u>Children's</u>
<u>Hospital and Medical Ctr v Bonta</u>, 97 Cal App 4th 740, 779-80 (2002)
(relying upon <u>Wallace v Consumers Cooperative of Berkeley, Inc</u>, 170
Cal App 3d 836 (1985)).  It is doubtful whether this principle
applies in the CFCA context given that § 12652(g)(8) explicitly
permits fee awards only for time "necessarily incurred."  Even
overlooking this wrinkle, the fact that Costa failed to obtain
relief from the bankruptcy stay as to W R Grace belies any
suggestion that counsel's efforts toward that end were "useful" to
the resolution of <u>any</u> issues in this case, fee-related or
otherwise.  On the other hand, Costa's efforts to obtain
clarification from the bankruptcy court that Baker & Taylor was not
encompassed by the stay appear to have been both successful and
necessary to place this case in a posture that would allow Costa to
pursue the present fee claim.

        The time entries accounting for motion practice before
the bankruptcy court do not indicate whether one of these two
distinct issues dominated counsel's time.  At the hearing, counsel
represented that the majority of the time was dedicated to lifting

United States District Court

For the Northern District of California

the stay as to Baker & Taylor but could not estimate what share with any degree of precision.  Accordingly, the court finds it appropriate to allow fees for two-thirds of the time spent in connection with the bankruptcy proceedings.


                                    D

         Finally, Baker & Taylor contends that Costa should be denied fees for services related to long-dismissed co-relator Thornburg, which, according to Baker & Taylor, accounts for 41.75 hours valued at $35,612.50.  Wallach Decl ¶3 & Ex A.  Costa concedes that time related to moving for reconsideration of Thornburg's dismissal should not be billed but contends that most other entries mentioning Thornburg reflect are properly billed. After reviewing the contested entries, the court concludes that the bill should be adjusted as proposed in the supplemental Chatfield declaration.  See Chatfield Supp Decl ¶13 at 6-7.


                                   IV

         Baker & Taylor also challenges the rates at which counsel's time is billed.

         Representing Costa in this matter are Eric Havian and Peter Chatfield, both partners in the law firm of Phillips & Cohen LLP, which has offices in Washington, D C, and San Francisco. According to one False Claims Act practitioner, Phillips & Cohen is "one of the preeminent firms in the country that specializes in representing qui tam relators.  The firm has been a leader in the field, and enjoys an outstanding reputation."  Doc #357 (Lamprey Decl) ¶3.  Messrs Havian and Chatfield began practicing law in 1981

**United States District Court**

For the Northern District of California

and 1987, respectively.  Both have impressive academic and
professional credentials and both began specializing in False
Claims Act claims when they joined Phillips & Cohen in 1994.
Chatfield Decl, Ex 2.  Mr Havian's time is billed at a rate of
$550/hour, Mr Chatfield's at $475/hour.  Id, Ex 1.  In support of
the reasonableness of counsel's billing rates, Costa submitted
declarations of two *qui tam* practitioners in San Francisco, both of
whom state that the foregoing rates "are reasonable for *qui tam*
practitioners in the San Francisco Bay Area and commensurate with
[Havian and Chatfield's] level of skill, experience, background and
reputation."  Lamprey Decl ¶7; Doc #356 (Scott Decl) ¶4.

When, as in this case, fees are awarded long after the
underlying litigation has run its course, it is both acceptable and
common practice in California to calculate the lodestar based on
current billing rates in lieu of adjusting a lodestar based on
rates prevailing at time services were rendered.  See <u>Graham</u>, 34
Cal 4th at 584 (citing <u>Copeland v Marshall</u>, 641 F2d 880, 893 n 23
(DC Cir 1980)); Richard M Pearl, <u>California Attorney Fee Awards</u> §
12.30 (2d ed Supp 2004).  Doing so compensates counsel for any
erosion of purchasing power during the delay in receiving payment.

As suggested by Mr Havian's declaration, however, *qui tam*
representation is rarely compensated on a non-contingent basis, Doc
#355 (Havian Decl) ¶4.  It is therefore fair to conclude that the
going rate for *qui tam* representation accounts for the risk of non-
recovery.  But the lodestar calculation must be based on the
"prevailing rate for private attorneys in the community conducting
<u>noncontingent</u> litigation of the same type." <u>Ketchum</u>, 24 Cal 4th at
1133 (emphasis in original).  Accordingly, the rates submitted by

13

United States District Court

For the Northern District of California

counsel are an inappropriate starting point for the lodestar calculation.

Consistent with the prior practice of the undersigned in calculating lodestars, the court will refer to the Laffey matrix, "[o]ne well-established objective source for rates that vary by experience." In re HPL Technologies, Inc Sec Litig, 366 F Supp 2d 912, 921 (ND Cal 2005) (Walker); see also Laffey v Northwest Airlines, Inc, 572 F Supp 354 (DDC 1983), aff'd in part, rev'd in part on other grounds, 746 F2d 4 (DC Cir 1984). According to this benchmark, average hourly rates for attorneys with 20+ years of experience during the period of June 1, 2005, through May 31, 2006, is $405/hour. See http://www.usdoj.gov/usao/dc/Divisions/ Civil_Division/Laffey_Matrix_5.html. This figure is, however, tailored to the District of Columbia, which has a somewhat lower cost of living than the San Francisco Bay area; the court will adjust these figures accordingly. The locality pay differentials within the federal courts — which, like law firms, employ lawyers — can approximate this difference. The Washington-Baltimore area has a 17.5% locality pay differential; the San Francisco-Oakland- San Jose area has a 26.68% locality pay differential. See http://jnet.ao.dcn/Human_Resources/Pay_Tables/2006_Pay_Tables/ Judiciary_Salary_Plan_Pay_Table_2006/Judicial_Salary_Plan.html. Thus, adjusting the Laffey matrix figures upward by 10% will yield rates appropriate for the Bay area.[1] Applying this adjustment and rounding upward, the court obtains a rate of $450/hour for Mr Havian. The rough accuracy of this estimate is confirmed by the

---

[1] (128.68% - 117.5%) / 117.5% = 0.0951489, or about 10%.

14

United States District Court

For the Northern District of California

1  fact that in the recent past, Mr Havian commanded a rate of

2  $475/hour in a non-contingency matter.  Havian Decl ¶4.  The court

3  therefore finds that $450/hour is a reasonable hourly rate for Mr

4  Havian's services in this matter.

5          With regard to Mr Chatfield, the court begins by

6  observing that according to Phillips & Cohen's website, and as

7  confirmed by counsel at the hearing, Mr Chatfield works in

8  Washington, D C.  See http://www.phillipsandcohen.com/CM/Attorneys.

9  The California Supreme Court has indicated that it is appropriate

10 to use rates prevailing in the market "where counsel is located."

11 PLCM Group, 22 Cal 4th at 1096.  Chatfield has been practicing law

12 for 19 years.  The Laffey matrix indicates a rate of $360/hour for

13 attorneys with 11-19 years experience.  Notably, however, Mr

14 Chatfield served as a law clerk to a federal judge for one year

15 following his graduation from law school.  In the court's view,

16 such experience is a substitute for at least one year of litigation

17 practice.  Accordingly, the court finds it appropriate to ascribe

18 20 years of experience to Mr Chatfield for purposes of the Laffey

19 matrix, which yields a rate of $405/hour (which need not be

20 adjusted because Mr Chatfield works in the District of Columbia).

21 The court finds this rate to be reasonable for Mr Chatfield's

22 services in this case.

23

24                              V

25         Next, the court considers the propriety of a lodestar

26 enhancement.  Costa requests that the lodestar be adjusted upward

27 by a factor of 1.5; Baker & Taylor contends that no enhancement is

28 justified.

United States District Court

For the Northern District of California

As an initial matter, the court observes that although no case has addressed whether lodestar enhancements are proper under § 12652(g)(8), the California Supreme Court presumes that the lodestar adjustment method applies unless the relevant statutory fee provision clearly states the contrary, as, for example, California Code of Civil Procedure § 1021.5, which provides that fees "shall not be increased or decreased by a multiplier based upon extrinsic circumstances." Ketchum, 24 Cal 4th at 1135-36. In the absence of any similar restriction in this statutory context, the court concludes that the lodestar adjustment approach applies.

"The lodestar adjustment approach * * * allows a court awarding attorney fees to include a fee enhancement for the purpose, e g, of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment, in an amount approaching the market rate for legal services." Id at 1136. Other relevant considerations include the novelty and difficulty of the issues, the skill displayed in presenting them and the extent to which the nature of the litigation precluded other employment by the attorneys. Serrano v Priest, 20 Cal 3d 25, 49 (1977) ("Serrano III"). But "when determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar." Ketchum, 24 Cal 4th at 1138.

Two considerations are irrelevant in this case. First, because the court has utilized current market rates for legal services in counsels' respective geographic markets, a lodestar enhancement to compensate for delay in payment is not justified. Second, although Baker & Taylor contends that counsel have already

16

United States District Court

For the Northern District of California

been compensated for the risk of nonpayment by whatever they may have been paid by Costa from his share of the settlement, this does not appear to be an appropriate basis upon which to deny an enhancement.  See Horsford v Bd of Trustees of Cal State Univ, 132 Cal App 4th 359, 401 (2005) ("[T]he trial court abused its discretion in requiring plaintiffs' counsel to look to their clients, under a contingency fee arrangement, to make up for any undercompensation arising from the court's statutory fee award.").

As noted, compensation for *qui tam* representation is typically contingent in nature.  Thus, the court concludes that the originally requested rates of $550/hour and $475/hour account for the risk of nonpayment.  And "for the most part, the difficulty of [the] legal question[s] and the quality of representation are already encompassed in the lodestar," Ketchum, 24 Cal 4th at 1139. See Lamprey Decl ¶7 (stating that rates of $550/hour and $475/hour are "commensurate with [counsels'] level of skill, experience, background and reputation"); Scott Decl ¶4 (same).  Accordingly, the court finds it appropriate to derive a multiplier from counsels' originally requested rates.  The court does so by dividing the sum of counsels' originally requested rates by the sum of their Laffey-based rates (effectively averaging each pair of rates), which yields a multiplier of 1.2.[2]

Further, applying the multiplier to fee-related work is appropriate in this case, in view of the fact that much uncertainty surrounded Costa's entitlement to fees even after the substantive objectives of the action were attained.  See Graham, 34 Cal 4th at

---

[2]  ($550/hour + $475/hour) / ($450/hour + $405/hour) = 1.1983, or about 1.2.

United States District Court

For the Northern District of California

583.   Relief from the bankruptcy stay as to Baker & Taylor and reinstatement of Costa as a proper *qui tam* plaintiff were certainly not results upon which the undersigned would have bet the farm. But because a lower enhancement, if any, is generally appropriate for fee litigation, see id, and because some of the fee-related litigation (i e, the present motion) was not clouded by uncertainty, the court finds it appropriate to apply a lower multiplier of 1.1 for fee-related litigation.

## VI

Costa shall submit a revised fee application consistent with this order on or before June 9, 2006.   Specifically, Costa's revised application shall:

(1)   exclude time that benefitted the FCA claims only;

(2)   exclude time spent in connection with relators' FRCP 54(b) motion and earlier motion for attorneys' fees, costs and expenses;

(3)   exclude one-third of time spent by Messrs Havian and Chatfield, respectively, in connection with the W R Grace bankruptcy proceedings;

(4)   exclude time related to dismissed co-relator Thornburg as set forth in ¶13 of the supplemental Chatfield declaration, Doc #359;

(5)   bill Mr Havian's efforts at a rate of $450/hour;

(6)   bill Mr Chatfield's efforts at a rate of $405/hour; and

(7)   segregate fees incurred in advancing the substantive claims from fee-related fees.

//

18

Baker & Taylor may file a response not exceeding five pages on or before June 16, 2006, at which time the matter will be submitted.

       SO ORDERED.

                                          _____

                                          VAUGHN R WALKER

                                          United States District Chief Judge

**United States District Court**
For the Northern District of California